IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RAMELL SCOTT HURDLE** : | |
| *Plaintiff* : | |
| : | |
| v. : | **CIVIL ACTION NO. 20-CV-5595** |
| : | |
| **JUDGE MARIA L DANTOS**, *et al.*, : | |
| *Defendants* : | |

**M E M O R A N D U M**

**QUIÑONES ALEJANDRO, J.**                                                         **NOVEMBER 17, 2020**

Plaintiff Ramell Scott Hurdle, a pretrial detainee being held at Lehigh Count Prison ("LCP"), filed this civil action pursuant to 42 U.S.C. § 1983 based on allegations related to his placement in segregation. Hurdle names as Defendants Judge Maria L. Dantos, of the Lehigh County Court of Common Pleas, Lehigh County Senior Deputy District Attorney Robert William Schopf, LCP Warden Kyle Russell, and LCP Deputy Warden Steven Miller. Hurdle seeks to proceed *in forma pauperis* and has submitted a copy of his institutional account statement. For the reasons set forth, the Court will grant Hurdle leave to proceed *in forma pauperis* and dismiss his Complaint, in part, with prejudice, and, in part, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.    FACTUAL ALLEGATIONS**

Hurdle's allegations are brief. He asserts that June 30, 2020, Defendant Schopf filed a motion before Judge Dantos to restrict Hurdle's communications. (ECF No. 2 at 4.)[1] Shortly thereafter, on July 6, 2020, Hurdle was placed in segregation and no corrections officers could tell

---

[1]      The Court adopts the pagination supplied by the CM/ECF docketing system.

1

him why.  (*Id.*)  He was denied permission to call his attorney on seven occasions between July 10, 2020 and September 15, 2020 while he was in segregation.  (*Id.*)

Hurdle received a hearing at LCP on August 27, 2020.  The hearing was conducted by Defendant Miller, Lt. Albert and Case Manager Leadbedder.  (*Id.*)  Hurdle asked to contact his lawyer and his family and to be moved to a different unit.  (*Id.*)  He also asked for mental health services and access to legal research and hygiene products.  (*Id.*)  Miller denied his requests.  (*Id.*)  Hurdle asserts that Defendants Schopf and Dantos violated his civil rights by preventing him from communicating with his attorney.  (*Id.*)  He asserts that Defendants Russell and Miller violated his civil rights by placing him in segregation.  (*Id.*)

A review of public records confirms that Hurdle was arrested on May 15, 2019 on charges of trafficking in individuals and prostitution related charges, *see Commonwealth v. Hurdle*, CP-39-CR-0002509-2019 (C.P. Lehigh).  Defendant Dantos was the judge initially assigned to CP-39-CR-0002509-2019 and conducted Hurdle's arraignment and bail hearing.  Defendant Schopf is the district attorney listed as prosecuting the case.  Hurdle was represented by Attorney Steven Mills, but counsel was later granted leave to withdraw and, after Hurdle proceeded *pro se* for a brief period, he was represented by Attorney Richard Webster as of February 26, 2020.  Attorney David Knight entered an appearance for Hurdle on May 18, 2020.

Hurdle posted bail on May 7, 2020.  However, on May 26, 2020, the Commonwealth filed an emergency motion to revoke bail and Judge Dantos granted the motion the same day.  The reason for the emergency motion appears to be Hurdle's arrest on May 22, 2020 on charges of strangulation and harassment, *see Commonwealth v. Hurdle*, CP-39-CR-0002577-2020 (C.P. Lehigh).  Defendant Schopf is listed as the district attorney on that case as well and Hurdle is represented by Attorney Knight.  The docket for the 2020 case notes a sealed entry by Judge Dantos

on June 30, 2020.  The date of the sealed order is the same date Hurdle alleges that Judge Dantos approved a motion filed by Defendant Schopf to restrict Hurdle's communications.

Hurdle asserts claims under the Civil Rights Act for violations of his Sixth and Fourteenth Amendment rights.  He seeks money damages.

## II.     STANDARD OF REVIEW

The Court grants Hurdle leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[2]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not suffice.  *Id.*  As Hurdle is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.    DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

---

[2]     However, as Hurdle is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.     Claims Against Judge Dantos

Hurdle has named Judge Dantos as a Defendant because she entered an order in his criminal case. This claim is not plausible. Judges are entitled to absolute immunity from civil rights claims that are based on acts and/or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

Because the claim for money damages against Judge Dantos is based on actions taken in her judicial capacity in Hurdle's criminal case over which she unquestionably had jurisdiction, she is immune from Hurdle's civil rights claim. Therefore, the claim against her is dismissed, with prejudice.

### B.     Claims Against DA Schopf

Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31

(1976). Absolute immunity extends to the decision to initiate a prosecution, *Imbler*, 424 U.S. at 431, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence. *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020). Further, District Attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009).

Hurdle's claim against Defendant Schopf is based on Schopf filing a motion with Judge Dantos in Hurdle's criminal case. This clearly falls within the ambit of acts "intimately associated with the judicial phase of the criminal process." The motion was filed after the criminal charges were initiated and presented to Judge Dantos to seek relief for the Commonwealth. While the exact nature of the sealed motion is unclear from the public record, it is clear Schopf was acting as an advocate for the Commonwealth when the motion was filed. Accordingly, he is immune and the claims against him are dismissed, with prejudice.

### C.     Claims Against Russell and Miller

Hurdle has named LCP Warden Kyle Russell as a Defendant and, other than listing him in the caption, Hurdle's only allegation against Russell is that, as Warden, he "imposed this violation thus violating me once more by housing me on a punishment unit." (ECF No. 2 at 4.) Miller allegedly conducted the hearing and denied Hurdle's requests to contact his lawyer and his family, to be moved to a different unit, and for mental health services, access to legal research and hygiene products. (*Id.*)

      1.    *Placement in Segregation*

To the extent Hurdle's allegations attempt to assert a claim involving his placement in segregation and the denial of his request thereafter to be moved to a different unit, the claim is not plausible. The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). Restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when: (1) "there is a showing of express intent to punish on the part of [those] [ ] officials"; (2) "the restriction or condition is not rationally related to a legitimate non-punitive government purpose," *i.e.*, "if it is arbitrary or purposeless"; or (3) "the restriction is excessive in light of that purpose." *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 67-68 (3d Cir. 2007)) (alterations in original).

"[M]aintaining internal security and order in jails and prisons are 'legitimate governmental objectives'" that may justify the placement of a detainee in segregation, and "courts must give prison officials considerable discretion to manage internal security in their institutions." *Id.* In other words, if officials can articulate a legitimate managerial concern for placement of the detainee in restricted housing, a substantive due process claim is foreclosed. *Stevenson*, 495 F.3d at 69 ("Although the substantive and procedural due process evaluations are distinct, a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry").

From a procedural standpoint, "[t]he degree of process required varies depending on the reason for the transfer [to segregated housing], with greater process accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons." *Id.* at 70. "[T]he procedures required by *Wolff v. McDonnell,* 418 U.S. 539 (1974), apply if the restraint on liberty is imposed for disciplinary reasons; if the restraint is for 'administrative' purposes, the minimal procedures outlined in *Hewitt v. Helms,* 459 U.S. 460 (1983) are all that is required." *Lewis v. Williams*, Civ. A. No. 05-013, 2011 WL 2441377, at *17 (D. Del. June 13, 2011) (citing *Stevenson*, 495 F.3d at 70). The procedures set forth in *Wolff* "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018); *see also Quiero v. Ott*, 799 F. App'x 144 at n.6 (3d Cir. 2020) (*per curiam*). *Hewitt* requires that, within a reasonable time, a detainee be told the reason for the administrative transfer and given an opportunity to respond. *Steele*, 855 F.3d at 507; *Stevenson*, 495 F.3d at 70 (citations omitted).

Hurdle asserts that he received a hearing after his transfer to segregation that was presided over by Defendant Miller at which time he had the opportunity to challenge his placement in segregation. Because he admits that he received all the process that was due under *Hewitt*, a procedural due process claim is not plausible. Given Hurdle's allegations, as well as the public record concerning the sealed order being entered at approximately the same time as Hurdle was placed in segregation after his bail was revoked, it appears that any substantive due process claim based on prison officials' motivations in placing him in segregation is not plausible since his segregation appears to have been done for administrative purposes to comply with a judicial order and there is no allegation by Hurdle that the placement was arbitrary or purposeless. Moreover, if

7

Hurdle was placed in segregation in response to a judicial order, the defendants taking the action are entitled to quasi-judicial immunity. *See Hamilton v. Leavy*, 322 F.3d 776, 782-83 (3d Cir. 2003) (it is well-settled that "action taken pursuant to a facially valid court order receives absolute immunity from § 1983 lawsuits for damages."). However, because the Complaint and state court docket are not entirely clear on the nature of the order, the Court cannot say, at this time, that Hurdle can never state a plausible substantive due process claim based on his placement in segregation. Accordingly, the dismissal of this portion of the claim will be without prejudice. Hurdle is granted leave to file an amended complaint if he is able to cure the defects the Court has identified in the substantive due process claim.

      2**.**    *Access to Counsel*

"Under the Sixth Amendment, a pretrial detainee has a right to utilize counsel to defend against a criminal case that the state has brought against him." *Prater v. City of Philadelphia*, Civ. A. No. 11-1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015) (on remand) (citing *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)). With respect to restrictions on attorney contact with clients, "[t]he Supreme Court [has] held that 'inmates must have a reasonable opportunity to seek and receive the assistance of attorneys' and that [prison] '[r]egulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid.'" *Id.* at 184 (fourth alteration in original) (quoting *Procunier v. Martinez*, 416 U.S. 396, 419 (1974)). Thus, where an institutional restriction impedes a pretrial detainee's access to criminal counsel, "'the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.'" *Id.* at 187 (quoting *Bell*, 441 U.S. at 547). A prison regulation restricting a pretrial detainee's contact with his attorney will be unconstitutional where

it "'unreasonably burden[s] the inmate's opportunity to consult with his attorney and to prepare his defense.'" *Id.* (quoting *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978)).

Notably, unlike a First Amendment access to the courts claim, discussed below, a claim of unreasonable interference with a pretrial detainee's Sixth Amendment right to counsel does not require a showing of actual injury. *See Benjamin*, 264 F.3d at 185 (pretrial detainee has standing to assert unreasonable interference with Sixth Amendment right even if the interference did not result in "actual injury"). Although the Third Circuit has not ruled on this issue in a published opinion, the court in *Prater* noted that the district court had failed to address the detainee's Sixth Amendment interference with right to counsel claim and disagreed with the district court's implicit conclusion that the claim required a showing of actual injury. 542 F. App'x at 138, n.5 (affirming in part on alternate basis) (citing *Benjamin*, 264 F.3d at 185). As Hurdle alleges that he was denied permission to call his attorney on seven occasions between July 10, 2020 and September 15, 2020 while he was in segregation, his allegation may be plausible.

However, the only Defendants against whom he seeks to assert this claim are Judge Dantos and Prosecutor Schopf who are immune from suit. Further, as stated above, if another Defendant was acting pursuant to a judicial order when he or she barred Hurdle from access to counsel that person would be entitled to quasi-judicial immunity. Because this claim may be viable, the Court will permit Hurdle to file an amended complaint if he can name a non-immune defendant whose actions allegedly violated his Sixth Amendment right to contact his criminal counsel.

3.   *Access to Legal Research*

Hurdle mentions that he asked for access to legal research during his hearing, but the request was denied by Miller. This portion of the claim, which the Court deems to be a claim alleging a violation of the First Amendment right of access to the courts, *see Johnston v. Artist*,

Civ. A No. 12-4460, 2013 WL 1164501, at *3 (D.N.J. Mar. 20, 2013) (treating complaint asserting that access to the prison law library and legal research as an access to courts claim), is not plausible.

"A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.* Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per curiam*).

As Hurdle does not assert that he lost a nonfrivolous and arguable claim as a result of his placement in segregation, and the public record shows (1) he was represented by counsel during the time he was in segregation, and (2) his criminal case has not been resolved against him, this claim is not plausible. As it appears that any attempt to amend this claim would prove futile for these same two reasons, the claim is dismissed, with prejudice. *See Grayson v. Mayview State*

*Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile.").

          4.    *Access to Mental Health Services and Hygiene Products*

Finally, Hurdle mentions he asked for access to mental health services and hygiene products during his hearing. However, he provides no details about his requests, his need for mental health services, or how he was injured from the lack of hygiene products. As the Court cannot say at this time that Hurdle can never assert a plausible claim against a non-immune defendant concerning the denial of mental health services and hygiene products, Hurdle will be granted leave to amend this portion of his claim as well.

**IV.    CONCLUSION**

For the foregoing reasons, Hurdle's Complaint is dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) as to all Defendants and all claims. Defendants Dantos and Schopf are dismissed, with prejudice, and Hurdle's procedural due process and access to the courts claims are also dismissed, with prejudice. All other claims against Defendants Russell and Miller are dismissed, without prejudice, and Hurdle may file an amended complaint if he can cure the defects the Court has identified in his remaining claims against non-immune Defendants. An appropriate Order follows.


**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*