IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RAMELL SCOTT HURDLE** : | |
| *Plaintiff* : | |
| : | |
| v. : | **CIVIL ACTION NO. 20-CV-5595** |
| : | |
| **KYLE RUSSELL**, *et al.*, : | |
| *Defendants* : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J                                        FEBRUARY 10, 2021

Plaintiff Ramell Scott Hurdle, a pretrial detainee being held at Lehigh County Prison ("LCP"), filed this civil action pursuant to 42 U.S.C. § 1983. In a prior Memorandum and Order, the Court dismissed Hurdle's claims against several defendants, with prejudice, and dismissed the claims against LCP Warden Kyle Russell, and LCP Deputy Warden Steven Miller, without prejudice, and allowed leave to file an amended complaint. Hurdle has now returned with an Amended Complaint ("AC") in which he names Russell, Miller, Case Manager Josh Leadbedder and Prime Care Medical, Inc., as Defendants. Russell, Miller and Leadbedder are sued in their individual and official capacities. Hurdle asserts claims based on an alleged denial of access to counsel and access to medical care and hygiene. For the reason set forth, the Court will dismiss Hurdle's official capacity claims with prejudice and terminate Warden Russell as a defendant. Further, his medical claim against Prime Care Medical, Inc., and his claims based on access to hygiene will be dismissed, without prejudice. His claim based on access to counsel will be served for a responsive pleading.

1

I.      **FACTUAL ALLEGATIONS**

Hurdle alleges that his requests to phone his attorney were denied on eight specific occasions between July and December 2020 at a time that LCP was under a COVID-19 related lockdown. (ECF No. 8 at 4.)[1] He alleges that a court order, while restricting his communications, still permitted him to have contact with his attorney. (*Id.*) He alleges that Miller and Leadbedder were the officials who denied him the ability to contact his attorney. (*Id.* at 5.)

Hurdle also alleges that on December 2, 2020, two inmates housed on his unit "has shower restriction. All while the jail is on lockdown for the corona virus." (*Id.*) Also, two other inmates allegedly tested positive for the virus "with no treatment or relief for them or any of us. One of which were just brought to the unit"[2] (*Id.*) He alleges he has been denied unspecified mental health services and hygiene products on several dates from October to December 2020, and his requests to see unspecified medical specialists have been denied. (*Id.*) While he mentions that he suffers from depression (*id.*), he provides no other details of his need for mental health services or who, if anyone, denied him such services. Finally, Hurdle alleges that the lockdown conditions have denied him the ability to engage in personal hygiene. (*Id.*) He makes no specific demand for injunctive relief or money damages in the AC, although Hurdle asked for money damages in his original Complaint.

---

[1]     The Court adopts the pagination supplied by the CM/ECF docketing system. Hurdle submitted his AC without a signature. (ECF No. 7.) He later complied with an Order directing him to sign the pleading and return the signed version of the AC to the Clerk of Court. (ECF No. 8.) All citations are to the signed version.

[2]     While Hurdle mentions other unnamed inmates who were allegedly denied medical treatment or showers, he may not bring a claim on their behalf. Although an individual may represent himself *pro se*, a non-attorney may not represent other parties in federal court. *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007). Accordingly, the Court interprets the allegations about other inmates as background information to Hurdle's own claims.

The Court previously noted that a review of public records confirms that Hurdle is a pretrial detainee awaiting trial on charges of trafficking in individuals and prostitution related charges, *see Commonwealth v. Hurdle*, CP-39-CR-0002509-2019 (C.P. Lehigh). Hurdle was originally represented by Attorney Steven Mills, but counsel was later granted leave to withdraw and, after Hurdle proceeded *pro se* for a brief period, as of February 26, 2020, he was represented by Attorney Richard Webster. Attorney David Knight entered an appearance for Hurdle on May 18, 2020.

Hurdle posted bail on May 7, 2020. However, on May 26, 2020, the Commonwealth filed an emergency motion to revoke bail that was granted the same day. The reason for the emergency motion appears to be Hurdle's arrest on May 22, 2020, on charges of strangulation and harassment, *see Commonwealth v. Hurdle*, CP-39-CR-0002577-2020 (C.P. Lehigh). The docket for the 2020 case notes a sealed order entered on June 30, 2020 that apparently restricts Hurdle's communications while he is detained.

## II.  STANDARD OF REVIEW

Because Hurdle has been granted leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies. This statute requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Hurdle is proceeding

*pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## II.   DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.   Official Capacity Claims

Hurdle has named all Defendants except for Prime Care Medical, Inc., in their official capacities. Claims against county level officials named in their official capacity are indistinguishable from claims against the County that employs them. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See* Monell, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that

custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, the Defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted).

To the extent Hurdle seeks money damages against Russell, Miller and Leadbedder in their official capacities, the claim is not plausible. Hurdle has not alleged a policy or custom of Lehigh County or that such a policy or custom caused a constitutional violation. Accordingly, the official capacity claims are not plausible. The Court cannot, however, say at this time that Hurdle can never assert such a plausible claim and, accordingly, the official capacities claims will be dismissed, without prejudice, and with leave to amend if Hurdle can cure the defects the Court has identified.

### B. Access to Counsel Claim

Hurdle alleges that Defendants Miller and Leadbedder denied him the ability to contact his attorney on specific dates. As the Court previously noted, "[u]nder the Sixth Amendment, a pretrial detainee has a right to utilize counsel to defend against a criminal case that the state has brought against him." *Prater v. City of Philadelphia*, Civ. A. No. 11-1618, 2015 WL 3456659, at

\*4 (E.D. Pa. June 1, 2015) (on remand) (citing *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)).  With respect to restrictions on attorney contact with clients, "[t]he Supreme Court [has] held that 'inmates must have a reasonable opportunity to seek and receive the assistance of attorneys' and that [prison] '[r]egulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid.'"  *Id.* at 184 (fourth alteration in original) (quoting *Procunier v. Martinez*, 416 U.S. 396, 419 (1974)).  Thus, where an institutional restriction impedes a pretrial detainee's access to criminal counsel, "'the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.'"  *Id.* at 187 (quoting *Bell*, 441 U.S. at 547).  A prison regulation restricting a pretrial detainee's contact with his attorney will be unconstitutional where it "'unreasonably burden[s] the inmate's opportunity to consult with his attorney and to prepare his defense.'"  *Id.* (quoting *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978)).  Because, unlike a First Amendment access to the courts claim, a claim of unreasonable interference with a pretrial detainee's Sixth Amendment right to counsel does not require a showing of actual injury, *see Benjamin*, 264 F.3d at 185 (pretrial detainee has standing to assert unreasonable interference with Sixth Amendment right even if the interference did not result in "actual injury"), the allegations against Miller and Leadbedder will be served for a responsive pleading.

      **C.**    **Access to Mental Health Services and Hygiene Products**

In the prior Memorandum, the Court dismissed without prejudice Hurdle's claim for denial to mental health services and hygiene products because he provided no details about his requests, his need for mental health services or how he was injured from the lack of hygiene products.  (ECF No. 5 at 11.)  Hurdle was granted leave to amend this portion of his claim if he was able to cure the defects the Court identified.  In the AC, Hurdle alleges he has been denied unspecified mental

health services and hygiene products on several dates from October to December 2020, and his requests to see unspecified medical specialists have been denied. He blames the lockdown conditions for his inability to engage in personal hygiene. While he has provided a list of dates on which he alleges he was denied mental health services and hygiene products, Hurdle has again failed to allege with specificity what mental health services he needed and who, if anyone, denied him such services.

The Court liberally interprets Hurdle's allegations about mental health services and medical specialists as an attempt to state a Fourteenth Amendment claim for deliberate indifference to a serious medical need. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[3] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents

---

[3]  As Hurdle is a pretrial detainee, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (holding that attaching documents to grievance form is insufficient under *Rode* to show personal direction or actual knowledge by recipient of underlying facts)).

### 1. Claim Against Prime Care Medical, Inc. for Medical Services

The United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). Rather, in order to hold a private health care company like Prime Care Medical, Inc., liable for a constitutional violation under § 1983, Hurdle must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d 575, 583-84 (citing *Bd. of the Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, Civ. A. No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for

constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted).

Hurdle has failed to allege a policy or custom of Prime Care Medical, Inc., or that such a policy or custom caused a constitutional violation. He has also failed to allege other than in conclusory terms that he had a serious medical need, and that any prison official knew of his needed for mental health treatment and either intentionally refuses to provide treatment, delayed providing treatment, or prevented him from receiving treatment.

### 2. Claims Concerning Hygiene

To establish a basis for a Fourteenth Amendment violation, a pretrial detainee must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious, and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution."). Furthermore, "[i]n determining whether

restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3.

Hygiene falls with the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Hurdle, however, fails to set forth specific facts suggesting how he was denied hygiene and, more importantly, identify a defendant or defendants who were personally involved in the alleged denial of hygiene. Without more, the Court cannot discern that Hurdle's vague suggestion that he was denied hygiene amounts to punishment.

## IV.     CONCLUSION

For the foregoing reasons, the Court will dismiss Hurdle's official capacity claims, his medical claim against Prime Care Medical, Inc. and his claims based on access to hygiene without prejudice. Because the Court cannot say at this time that Hurdle can never state official capacity claims or claims against a defendant who was personally responsible for the alleged denial of mental health services and access to hygiene, the Court will grant Hurdle one final opportunity to attempt to cure the defects in these claims. In the alternative, Hurdle may notify the Court that he wishes to proceed on his alleged access to counsel claim *only*. In that event, the Court will order the Amended Complaint served on Defendants Miller and Leadbedder only. An appropriate Order follows.

*NITZA I. QUIÑONES ALEJANDRO*
*Judge, United States District Court*